**UNITED STATES of America,**
**Appellee,**

v.

**John Clarence PARKER, Appellant.**

**No. 25186.**

United States Court of Appeals,
Ninth Circuit.

Oct. 15, 1970.

Kristina M. Hanson (argued), Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for appellant.

Larry S. Flax (argued), Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Criminal Division, Los Angeles, Cal., for appellee.

Before KOELSCH, ELY and KIL-KENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant was convicted by a jury of two bank robberies, the first of which occurred on April 30, 1969, the second on May 23rd of the same year. He was sentenced to 20 years imprisonment on

each count, the sentences to run concurrently.

Appellant's assignments of error are based upon in-court identifications which he claims were tainted with an illegal line-up in violation of the doctrines taught in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Appellant was not represented by counsel at the time of the line-up. Although the in-court identifications in connection with the April 30th conviction may be impermissibly tainted by the line-up procedure, we hold the record before us clearly demonstrates that the paramount in-court identifications on the May 23rd conviction were not so tainted and that the latter were of an origin entirely independent of the alleged illegal line-up identification of May 26, 1969.

Count One of the indictment charges the appellant and Loren Hugh Smith[1] with the crime of bank robbery with force and violence of the Hollywood Branch, The Bank of California, 1555 North Vine Street, Los Angeles, on May 23, 1969.

The record reveals that appellant and Smith became acquainted while incarcerated in the Nevada State Prison and at the time of the trial had known each other for approximately three years. They arrived in Los Angeles in mid-April, 1969, and registered together at the Knickerbocker Hotel. Prior to the visit to Los Angeles, they had been working together in Yuma, Arizona. On April 30th, the date of the first robbery, Smith rented a 1969 Ford Fairlane automobile, the rental on which was paid by appellant. This automobile was the subject of considerable testimony in connection with the May 23rd robbery. The Knickerbocker Hotel is located approximately two and one-half blocks from the bank in question. After staying at the hotel for a period of approximately ten

days, they checked out, returned to Yuma and picked up an automobile which they drove to South Dakota. They returned on May 18th and again registered in at the Knickerbocker. Appellant and Smith were occupying the same room in the hotel, the room being registered in the name of Smith and Rogers, a name assumed by appellant. Thus, the record demonstrates, beyond question, that appellant and Smith were very close personal friends.

Mr. Bowen, a security guard employed by the bank at its Vine and Selma Branch for approximately eight and one-half years, testified that on Monday, May 19, 1969, he observed Smith enter the bank through the Selma Street entrance, walk very slowly through the bank and depart through the Vine Street door. Bowen noticed that Smith had a very unusual mop of hair on his head and that he walked very slowly through the bank from one door to the other for a distance of approximately 100 feet. Bowen followed Smith to where the latter entered a 1969 Ford Fairlane, which was parked approximately five car lengths from the west door of the bank. There was another person seated behind the steering wheel. The occupants sat in the automobile for a period of about ten minutes and then drove away. Bowen had a good view of the driver's profile. On the following day, Bowen saw appellant enter the bank about 2:30 P.M. in the afternoon. At the time, the latter was standing in line at the chief teller's window. From his position, Bowen immediately recognized appellant's profile as the same profile observed in the driver's seat of the automobile on the previous day. Appellant was then wearing a very unusual orange and yellow striped shirt. He moved up the line to the teller's window and then moved away and "like a shot, in a hurry" he departed through the Selma Street door. Bowen followed him out the door. He crossed the street and entered the driver's side of the 1969 Ford Fairlane, the same

---

[1]. Smith entered a plea of guilty prior to this trial to the lesser charge included in

the bank robbery statute, 18 U.S.C. § 2113(a) (d).

automobile observed by Bowen the day before. Another person was in the automobile at the time, but Bowen did not get a good view of him. After testifying to the foregoing, Bowen positively identified the appellant as the man whom he followed out of the bank on May 20th. The fact that Bowen was called upon to identify appellant at the May 26th line-up is of no importance. His testimony clearly indicates that his in-court identification was on the basis of his observances in the bank and at the automobile rather than in any line-up identification.

Mr. Kreuger, an operations officer employed by the bank, was in the bank at the time of the robbery and was told "don't move" by Smith, the robber. Kreuger kicked off the silent burglar alarm and followed Smith at a distance of approximately 15 feet when the latter turned around and said, "Don't you move," as he pulled a pistol and pointed it toward the former. The officer saw Smith run across the street to the 1969 Ford. The police then surrounded the car. He saw appellant in the car in the driver's seat.

Mr. Thompson, a Los Angeles police officer, was assigned to a surveillance unit on the morning of May 23rd. He commenced the surveillance at the Knickerbocker Hotel in connection with a 1969 blue Ford Fairlane with a specific license number, and two male persons, one with black hair, the other red headed. He was accompanied on the surveillance by Officer Graf. They were in street clothes and their auto was unmarked. They first observed the vehicle on the parking lot of the hotel. While the officers were attempting to find a vantage point, the vehicle left the lot. They immediately went to the Selma and Vine Branch of The Bank of California. Officer Graf then observed two persons, one with red hair and the other with dark hair in the vehicle, but then lost contact. Some time later, the officers again observed the two men walking in the vicinity of the bank. At the time they were walking northbound on Vine. They then turned left on Hollywood. One of the persons had red hair and the other one long dark hair.[2] Officer Thompson continued the surveillance while Graf made a telephone call. At this point, the two men parted company, Smith walking northward on Ivar toward the officer and appellant continuing toward Selma. The officer followed appellant. A short time later, the two men met and walked southward on the west side of Vine toward Sunset. Shortly, they turned around and walked back towards Selma and Vine. At this point, Thompson lost contact with Smith and observed appellant walk across Selma and approach the vehicle, the Ford Fairlane. In the meantime, there had been an automobile accident near the bank at the northeast corner of Vine and Selma. Uniformed police continued investigating the accident until approximately 10:40 P.M. About the time the police investigating the accident drove away, the appellant was walking southbound on Vine. Contact was lost with appellant when the latter turned in front of the bank.

Mr. Seret, a detective sergeant with the Los Angeles Police Department, testified that on the morning of May 23rd, he was in the vicinity of Selma and Vine on a bank surveillance. He was looking for the vehicle which Thompson and Graf had found and lost. Seret found the vehicle on Selma approximately 20 feet west of the rear door of the bank. It was not occupied at the time. The witness described the vehicle as a 1969 Ford, blue in color, with the indicated California license. He kept the vehicle under observation and within half an hour observed the appellant approach the car from Vine Street, place a coin in the parking meter and then go southward toward Vine and disappear. Some few minutes later, appellant crossed Vine, en-

2. At this point in the trial, the officer identified appellant (red hair) and Smith (dark hair) as the two persons.

tered the vehicle, started the motor, turned the wheels away from the curb and then leaned out the window looking in the direction of the rear door of the bank. After starting the motor appellant "raced it up and down" as his head was turned out the window. At that time, Seret received a radio message indicating that the person in dark clothing with dark hair had already entered the bank.[3] Then Seret received a radio broadcast that a robbery alarm had been set off at the bank. He kept his eyes on the appellant and kept hearing the engine racing up and down, while the latter was watching the rear door of the bank. The officer then observed the rear door of the bank open and saw a person, who turned out to be Smith, exit from that door at a fast gait while holding something under his coat. Smith crossed the street in front of the officer and went directly to the Ford, then occupied by appellant. When Smith was within four or five feet of the vehicle and reached to open the door, the officer drew his gun and made the arrest. At the same time, he ordered appellant to keep his hands on the wheel. The officer took the gun and the money [4] from Smith. The robber had one hand reaching out for the door of the car at the time that he was arrested.

The identification of the appellant as the person who was with the bank robber Smith and was occupying what was obviously the "get-away" automobile at the time of the robbery, is overwhelming. For that matter, appellant took the witness stand and conceded that he was Smith's constant companion and was walking with him just prior to the robbery. The only material issues which he does not concede with reference to the May 23rd robbery was that "(1) he was a participant in the robbery, and (2) that he was in the bank on May 20." In the last analysis, an issue of identification is not really involved on the Count One charge. This is not a case of claimed mistaken identity. The evidence is decisive that appellant was the man who was consorting with the bank robber for hours before the robbery and was the man sitting in the robber's automobile, with motor racing and wheels turned away from the curb, when the robber reached for the car door at the time of the arrest. The direct and circumstantial evidence of appellant's participation in the May 23rd robbery is almost conclusive. Even a child would have great difficulty in believing appellant's fairy tale of how he just casually and innocently happened to be in the almost continuous company of the bank robber and in the robber's auto at the right place at the right time for the get-away after the robbery. Appellant makes no claim that the evidence is insufficient to support the verdict on either count. He recognizes, of course, that the evidence, on appeal, must be viewed in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Moody v. United States, 376 F.2d 525, 527 (9th Cir. 1967).

Where the testimony of the officers and that of appellant and Smith conflicted, the jury, for impeachment purposes, was entitled to look to appellant's record of previous convictions: (1) Dyer Act conviction, 1948; (2) First Degree Burglary conviction, 1956; (3) Grand Larceny conviction, 1963; and defendant Smith's First Degree Burglary conviction of 1964. Even assuming that error was committed in permitting the introduction of Bowen's in-court identification and that proper objection had been taken thereto, the error, on the record before us, would be harmless beyond a reasonable doubt within the meaning of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

3. At this point in the trial, the witness made an in-court identification of the appellant as the same person he saw get into the car, start and then race the motor.

4. $2,005.00.

Unlike *Wade* and *Gilbert,* the record before us on Count One is complete and permits us to decide whether the in-court identifications were tainted by the May 26th line-up so as to require a remand to the district court. We hold they were not so stigmatized.

In these circumstances, the possibility of an impermissible in-court identification in connection with the April 30th robbery and May 26th line-up is of no real significance. The trial judge carefully instructed the jury to consider separately the evidence as to each count.[5] Our whole jury system is based upon the recognized ability of the jury to follow instructions. Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954). It is our duty to assume that the jury followed the instructions. Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); Fineberg v. United States, 393 F.2d 417 (9th Cir. 1968); Cook v. United States, 354 F.2d 529 (9th Cir. 1965). Accordingly, we must assume that the jury did not erroneously confuse the evidence on the second count with that on the first. Here, we turn to Johnson v. United States, 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943), where Justice Frankfurter, with his usual eloquence, spoke thusly on the subject, "To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution * * *."

The judgment of conviction is affirmed on Count One, the May 23, 1969, robbery. Since the sentences run concurrently, we have no need to speak upon the validity of the in-court identifications, or other alleged errors, on the Count Two conviction.[6]

KOELSCH, Circuit Judge (concurring).

I concur in the result.

ELY, Circuit Judge (dissenting):

I respectfully dissent. The trial judge did not make, as he was required to do, his own independent preliminary determination as to whether the lineup procedure was impermissibly defective and, if so, whether it tainted the testimony of the prosecution's witnesses to the lineup. That such an independent determination is required is beyond doubt. The accused was without counsel when the lineup was conducted, and it is not controverted that he had not theretofore been adequately advised of his right to counsel. In these circumstances, the burden was upon the prosecution to convince the trial judge, prior to the introduction of the identifying testimony and "by clear and convincing evidence," that that testimony had not been tainted by the lineup, if defective, and the investigative technique with which it was attended. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). *See* United States v. Phillips, 427 F.2d 1035 (9th Cir. 1970).

In his principal opinion, my Brother Kilkenny appears to recognize that the existing law comports with my expres-

---

5. "The defendant is not on trial for any act or conduct that is not alleged in the indictment, and you will have noted when I discussed the indictment with you, that a separate crime or offense is charged in each of the two counts of the indictment. Each offense and the evidence applicable thereto should be considered separately. In other words, you should consider separate and apart whether or not the defendant was guilty of the offense charged that is alleged in the indictment to have occurred on April 30th, which is an altogether separate matter from the offense alleged in the other count in the indictment to have been on May 23rd. You have to consider each of the two counts separately, and the fact that you may find the defendant guilty or not guilty with respect to one count does not in any manner control what you should do with respect to the other count."

6. This principle has many times been utilized by our court: McCullough v. United States, 403 F.2d 1013 (9th Cir. 1968); Pasterchik v. United States, 400 F.2d 696 (9th Cir. 1968); Chavez v. United States, 387 F.2d 937 (9th Cir. 1967).

sions in the foregoing paragraph and that, accordingly, one of Parker's significant rights was bypassed. Yet, the principal opinion upholds Parker's conviction upon the rationale that the identifying testimony relating to the offense of April 30th could not have prejudicially affected Parker as to the charge pertaining 'to the May 23d offense. Not only is this conclusion unacceptable to me, it is, I think, positively inexplicable.

This is not a case in which the evidence of Parker's guilt was overwhelming. I acknowledge that there was sufficient evidence, particularly circumstantial, to support the jury's determination that Parker knowingly assisted in the robberies. But Parker did not himself rob the bank either on April 30th or May 23d. He testified that he had driven the robber to the bank as a favor, believing that the latter had a lawful purpose in being there, and the robber himself testified that Parker was innocent. Had the jury favored the direct testimony of these two men, over the prosecution's opposing inferences, Parker's acquittal would have followed as a matter of course. In effect, my Brothers have concluded that Parker would, beyond all reasonable doubt, have been found guilty of the May 23d offense even had the court conducted the required hearing and excluded the highly incriminating evidence pertaining to the offense of only a few days before. This conclusion requires the application of a degree of omniscience with which, I submit, none of us is endowed. Our own court has been pointedly reminded that we should not lightly say that error of constitutional dimension, under the test of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967), is harmless beyond all reasonable doubt. Wilson v. Anderson, 379 F.2d 330 (9th Cir. 1967), rev'd sub nom. Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968).

I would remand the cause simply for the purpose of permitting the district judge to conduct the limited inquiry which I outlined in the beginning. If, after conducting such a hearing, the dis-

trict judge determined that the challenged testimony was untainted, that should soon end the matter. If the judge should determine otherwise, then Parker is, in the interest of the fair and orderly administration of justice, entitled to a new trial uncorrupted by the introduction of the tainted testimony. *Cf.* Javor v. United States, 403 F.2d 507, 511 (9th Cir. 1968).