UNITED STATES of America,
Plaintiff-Appellee,

v.

Harlen MANUEL, Defendant-Appellant.

No. 82–1185.

United States Court of Appeals,
Ninth Circuit.

Argued Sept. 3, 1982.
Submitted Sept. 29, 1982.
Decided April 29, 1983.

Francisco Leon, Asst. Federal Public Defender, Tucson, Ariz., for defendant-appellant.

Roslyn O. Moore, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before KILKENNY, FLETCHER, and BOOCHEVER, Circuit Judges.

FLETCHER, Circuit Judge:

Harlen Manuel appeals from a conviction for second-degree murder resulting from a brutal killing on an Indian reservation. The damaging evidence against him was the detailed confession he gave five days after the killing. Manuel contends that this confession should have been suppressed because obtained in violation of the fourth amendment, and also because obtained in violation of the rule of *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Manuel further contends that his statutory right to a speedy indictment was denied, and that the trial judge improperly refused to instruct the jury on involuntary manslaughter. We affirm the conviction.

## FACTS

On August 3, 1981, the body of Terrell Howard was found in a ditch on the Salt River Indian Reservation. An autopsy re-

vealed that Howard had been badly beaten about the head and had died of a severe skull fracture. Earlier on August 3, F.B.I. agent Glenford Lewis had gone to the home of Jefferson Howard, Terrell Howard's uncle, to investigate an incident in which Jefferson had stabbed Harlen Manuel with an ice pick. Jefferson Howard told Lewis that he had stabbed Manuel after Manuel told him that he had killed Terrell Howard. The F.B.I. agents shared this information with the Salt River Tribal Police, who were also investigating the slaying of Terrell Howard.

The next day, F.B.I. agent Leon Fish and tribal police investigator Chester Mack traveled to Harlen Manuel's home, the residence of Manuel's grandparents, where Harlen Manuel lived, in search of further evidence. The sequence of the events that followed is disputed. The defendant contends that Mack radioed an order to arrest Manuel and the other suspects[1] as soon as he arrived at the Manuel residence and learned that the suspects were in another house. The Government, however, claims that Mack and Fish first interviewed Lorenzo Manuel, a nine year old boy, and Phyllis King, his sixteen year old sister,[2] both residents of the Manuel household. These two gave detailed accounts of the killing. They related that they had seen Harlen Manuel and Terrell Howard fighting on the night of July 31, 1981. While these two were fighting, Celestine Nelson picked up a two-by-four board and struck Howard over the head several times. Howard immediately fell to the ground, unconscious. Both Lorenzo Manuel and King said they saw the appellant and Nelson drag Howard away. Later, they saw Nelson and a third man, Londo Burns, carting Howard away in a wheelbarrow.

Officers Fish and Mack also spoke with Craig Nelson, another resident of the Manuel home, who told them that Harlen Manuel had admitted dropping a tree stump on Howard. Nelson showed the officers the tree stump in question, which was in the Manuel yard. The officers also found other bloodstained evidence on the scene that corroborated the accounts they had heard, including a bloodstained wheelbarrow and blood-soaked soil near the tree stump. The officers were also shown the two-by-four board that the witnesses said was used to beat Howard over the head.

At this point, Officer Mack received a radio report that tribal police had located the three suspects at the residence of Ernestine Collins, a neighbor, and that they were all heavily intoxicated. Tribal police took the three to the police station. Agent Fish and Officer Mack decided not to interview the suspects while they were drunk; rather, they elected to wait until the following day. The suspects were given meals and were allowed to sleep until the next morning.

Shortly after 8:00 a.m. on August 5, Fish questioned Manuel at the station after carefully instructing him concerning his *Miranda* rights. Manuel immediately confessed in detail his role in the killing. He told Fish that he had knocked Howard unconscious with a board and that he later dropped a heavy stump on Howard, killing him.

Following this interview, the United States Attorney's Office authorized prosecution for Manuel, but did not authorize his arrest. The Salt River Tribe declined to press charges against Manuel due to the likelihood of federal prosecution. Consequently, Manuel was released. On November 25, 1981, nearly four months later, Manuel was indicted and charged with second degree murder. Prior to trial, Manuel moved to suppress evidence of his confession; the motion was denied. On February 26, 1982, following a three-day trial, a jury found Manuel guilty of second degree murder. From this conviction, Manuel now appeals.

---

**1.** Celestine Nelson and Londo Burns. Both Nelson and Burns admitted their participation in the killing on August 5, 1981, but neither is involved in this appeal.

**2.** Lorenzo Manuel and Phyllis King were the nephew and niece of Harlen Manuel, the appellant.

## DISCUSSION

### A. *Admissibility of Manuel's Confession.*

#### 1. *Fourth Amendment Challenge.*

■ The appellant contends that his arrest on August 4 was illegal because it was ordered by tribal police before they had probable cause to believe that he had participated in the Howard slaying. The record does not allow us to determine whether this claim has merit, because the district court did not make the necessary factual findings following the evidentiary hearing on the issue.[3] On the morning of August 4, when the arrest took place, tribal police may or may not have had sufficient cause to arrest Manuel. The police at that time knew only the place where the body was found, the results of the autopsy, and the substance of a hearsay statement by the decedent's uncle that Manuel had admitted his involvement. We do not know whether this evidence alone gave the officers probable cause to arrest the appellant. This determination turns on whether they had sufficient knowledge that Jefferson Howard was credible and that the information he provided was reliable.[4] *See United States v. Huberts,* 637 F.2d 630, 635 (9th Cir.1980) (citing *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct.

1509, 12 L.Ed.2d 723 (1964)), *cert. denied,* 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981). The district court made no findings concerning this issue, nor did it decide when the order to arrest the appellant was given. If the tribal police did not have probable cause to arrest the appellant upon their arrival at the Manuel residence, and if tribal officer Mack ordered appellant's arrest immediately upon arrival, before he accumulated any more information, then Manuel's arrest was illegal.

■ However, we need not remand for a determination whether probable cause to arrest Manuel existed upon the officers' arrival, or whether Manuel's arrest was ordered immediately. Shortly after their arrival, the police accumulated more than enough evidence to justify the appellant's arrest and detention. It is unnecessary to repeat in detail the evidence that the officers found; most important were the statements of two separate eyewitnesses that they had seen Manuel helping to batter the victim into unconsciousness. Because of the overwhelming evidence of Manuel's involvement gathered independently on August 4, Manuel's confession given the next day was admissible even if his initial arrest was illegal.

This case is distinguishable from *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45

---

**3.** Instead, the district court ruled that any possible illegality of the tribal arrest could not affect the admissibility of the evidence in a federal prosecution. This conclusion was erroneous. Even though Indian tribal governments are to be viewed as "separate sovereigns" from the federal government akin to states for purposes of criminal procedure issues, *see United States v. Wheeler,* 435 U.S. 313, 319–30, 98 S.Ct. 1079, 1083–90, 55 L.Ed.2d 303 (1978), statements obtained by state officials in violation of the fourth amendment may not be used in a subsequent federal prosecution, *United States v. Perez-Castro,* 606 F.2d 251, 253 (9th Cir.1979).

Although the fourth amendment does not directly apply to Indian tribes, *see United States v. Wheeler,* 435 U.S. at 329, 98 S.Ct. at 1089, an identical limitation upon Indian governments is imposed by the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(2) (1976).

**4.** We do not mean to suggest that the officers lacked probable cause to arrest Manuel on the morning of August 4. Jefferson Howard's

statements were purportedly based on personal knowledge, which is an important criterion supporting reliability. *See Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969); *see also United States v. Perez-Esparza,* 609 F.2d 1284, 1287–88 (9th Cir. 1980). Also, Howard's story was corroborated to a degree by the autopsy, which revealed that the victim had died of severe head injuries. *See Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *United States v. Goff,* 681 F.2d 1238, 1240 (9th Cir. 1982); *United States v. Hamilton,* 490 F.2d 598, 600–01 (9th Cir.), *cert. denied,* 419 U.S. 880, 95 S.Ct. 145, 42 L.Ed.2d 120 (1974); *see also* 1 W. LaFave, *Search & Seizure* § 3.3, at 557–58 (1978). Our discussion is meant only to show the presence of an issue we need not decide in light of our conclusion that any possible illegality in Manuel's arrest did not taint his confession.

L.Ed.2d 416 (1975) and *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). In each of those cases, the defendant was arrested without probable cause, given his *Miranda* warnings, and *immediately* questioned concerning the crime under investigation, with a confession resulting. *Dunaway,* 442 U.S. at 203, 99 S.Ct. at 2251–52; *Brown,* 422 U.S. at 591, 593–94, 95 S.Ct. at 2256–57. The Supreme Court in each case ruled that the subsequent *Miranda* warnings did not prevent the confession from constituting a "fruit" of the illegal arrest. *Dunaway,* 442 U.S. at 216–19, 99 S.Ct. at 2258–60; *Brown,* 422 U.S. at 604–05, 95 S.Ct. at 2262. The court held that the focus for purposes of resolving the "taint" issue in cases such as this one must be whether the defendant's incriminating statements "were obtained by exploitation of the illegality of his arrest." *Dunaway,* 442 U.S. at 217, 99 S.Ct. at 2259 (quoting *Brown,* 422 U.S. at 600, 95 S.Ct. at 2260).

In the present case, Manuel's confession was not obtained by an exploitation of the possible illegality of his arrest. The tribal police may have ordered the appellant's arrest somewhat prematurely, but by the time he was actually located and arrested, the police plainly had probable cause to arrest Manuel for the tribal offense of assault.[5] The case is totally different from *Dunaway* and *Brown* because probable cause was amply established before the officers began their interrogation.[6] Both *Dunaway* and *Brown* stress the presence or absence of such intervening discoveries as a critical factor in ascertaining whether a confession is sufficiently attenuated from an illegal arrest to be admissible. *Dunaway,* 442 U.S. at 218, 99 S.Ct. at 2259; *Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62. The other factors listed by the Court all weigh in favor of attenuation here: The trial court expressly found Manuel's statements to be voluntary, a considerable period of time elapsed between Manuel's arrest and his interrogation,[7] and tribal police conduct, if illegal, was certainly neither flagrant nor designed to pressure the appellant into giving an unfair confession.[8] *See Dunaway,* 442 U.S. at 218, 99 S.Ct. at 2259–60; *Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62. Therefore we hold that even if the arrest of Manuel on August 4 was illegal, intervening events purged the initial taint of illegality, and that Manuel's confession was not obtained in violation of the fourth amendment. *See Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). *See also United States v. Wellins,* 654 F.2d 550 (9th Cir.1981).

2. *McNabb-Mallory Challenge.*

In *Mallory v. United States,* 354 U.S. 449, 452–55, 77 S.Ct. 1356, 1358–60, 1 L.Ed.2d 1479 (1957) (citing *McNabb v. United States,* 318 U.S. 332, 343–44, 63 S.Ct. 608, 614–15, 87 L.Ed. 819 (1943)), the Supreme Court held that where a criminal suspect held in federal custody is not promptly arraigned as required by Federal Rule of Criminal Procedure 5(a), an incriminating statement made by the suspect as a result of the delay may not be used at trial. The appellant contends that because he was arrested on the afternoon of August 4, and held without arraignment until the following morning, when he confessed, his confession should be suppressed under this federal supervisory rule.

We disagree with appellant's argument. In 1968, Congress enacted 18 U.S.C. § 3501 as part of Title II of the Omnibus Crime Control and Safe Streets Act of 1968. Section 3501 was intended to supersede the *McNabb-Mallory* rule as the source of federal supervisory power to suppress confessions obtained in violation of Federal Rule

---

**5.** Contrary to the appellant's contention, the fact that Manuel was arrested for the tribal assault offense and not for murder is of no significance.

**6.** *United States v. Perez-Esparza,* 609 F.2d 1284, 1289–90 (9th Cir.1980), is distinguishable for the same reason.

**7.** *See Leonard v. United States,* 391 F.2d 537, 538 (9th Cir.1968).

**8.** *See United States v. Perez-Esparza,* 609 F.2d 1284, 1289–90 (9th Cir.1980).

5(a). S.Rep. No. 1097, 90th Cong., 2d Sess. 40–41, *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2126–27. Under section 3501, voluntariness of the confession is the major focus of inquiry for deciding whether to suppress.[9] Pre-arraignment delay remains a very important criterion for assessing voluntariness under the statute, however. Section 3501(b) lists such delay first among the factors to be considered by the trial judge in determining whether a confession was voluntary.[10] Section 3501(c), by implication, provides that unreasonable pre-arraignment delay can provide the sole basis for a finding of involuntariness, if the delay exceeds six hours.[11] Appellant takes the position that the eighteen hour delay between his arrest and the questioning that evoked his confession requires suppression of the confession.

In *United States v. Halbert,* 436 F.2d 1226 (9th Cir.1970), we conducted an extensive inquiry into the legislative history of section 3501 and determined that subsection (c) does not impose a six hour maximum upon the period after arrest and prior to arraignment when a confession can be obtained. Rather, we concluded that when a delay of less than six hours occurs prior to the confession, the confession is admissible per se unless involuntary for reasons other than delay. 436 F.2d at 1234. Where the delay is longer than six hours, the *Halbert* court again concludes that a confession is not inadmissible per se. The test is again involuntariness, but unreasonable delay in excess of six hours can by itself form the basis for a finding of involuntariness. *See id.* at 1237.

We decide this case under the second rule of *Halbert.* The per se reasonable delay period of section 3501(c) was exceeded because Manuel was incarcerated for more than six hours without arraignment before giving his confession. The Government ar-

---

9. 18 U.S.C. § 3501(a) provides:

(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

10. 18 U.S.C. § 3501(b) provides:

(b) the trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assist-

ance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

11. 18 U.S.C. § 3501(c) provides:

(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

gues that Federal Rule 5(a) did not apply to Manuel, because he was arrested by tribal police and not federal officials. *Cf. United States v. Leeds,* 505 F.2d 161, 163–64 (10th Cir.1974) (Federal Rule 5(a) and *McNabb-Mallory* protections do not apply to suspect in tribal custody unless some "collusive working arrangement" between federal and tribal officials is shown). *Halbert* did not reach this question, but rather ruled that voluntariness of a confession is always an issue regardless of whether the defendant is in the custody of local or federal officials. 436 F.2d at 1231, 1233 & n. 4. We see no reason why the district court should not enjoy the full range of inquiry permitted under 18 U.S.C. § 3501 in deciding whether a confession is involuntary. Delay exceeding six hours is one factor to be considered, regardless of whether the delay is caused by local or federal officials. We find the presence or absence of a working agreement between tribal or state and federal officials essentially irrelevant, unless the agreement can be shown to be the product of collusive police conduct designed to elicit an involuntary confession. *See Halbert,* 436 F.2d at 1230; *Cote v. United States,* 357 F.2d 789, 793–94 (9th Cir.), *cert. denied,* 385 U.S. 883, 87 S.Ct. 173, 17 L.Ed.2d 110 (1966).

■ We find nothing in the record that would exclude Manuel's confession. The delay between his arrest and interrogation was reasonable under the circumstances. Uncontradicted testimony showed that Manuel was very heavily intoxicated when arrested on the afternoon of August 4. Questioning him in such a condition would have been much more likely to produce an unfair and involuntary confession than the procedure actually used. The tribal police provided Manuel with a meal and with sleeping accommodations so that he could regain sobriety. Although we do not sanction delay of any kind in bringing an accused person before a magistrate, delay engendered by such humanitarian motives can hardly be deemed unreasonable per se. *See United States v. Isom;* 588 F.2d 858, 862 (2d Cir.1978); *United States v. Bear Killer,* 534 F.2d 1253, 1257 (8th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976). Under the circumstances of this case, the delay did not render the appellant's confession involuntary.

Apart from the delay, appellant does not seriously contend that the incriminating statements he made on the morning of August 5 were involuntary. The district court specifically found the confession to be voluntary. We cannot say that this finding was incorrect; it was supported by evidence that F.B.I. agent Fish carefully explained to Manuel his *Miranda* rights prior to beginning the questioning, which immediately elicited Manuel's confession. We find that the district court properly applied the standard of 18 U.S.C. § 3501(b) to admit Manuel's confession. *See United States v. Mandley,* 502 F.2d 1103, 1105 (9th Cir.1974); *Halbert,* 436 F.2d at 1237.

B. *Speedy Trial Act.*

Following Manuel's arrest and custodial interrogation on August 4 and 5, he was released by the tribal police. Although federal authorities made an immediate decision to prosecute, they did not obtain a grand jury indictment until November 20, 1981, almost four months later. Manuel contends that this procedure violated the Speedy Trial Act, 18 U.S.C. § 3161(b) (1976), which provides in pertinent part that

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

The appellant argues that because more than sixty days elapsed between August 5 and the time he was indicted, the indictment should have been dismissed upon his pretrial motion.

■ We affirm the district court's denial of the motion, however, because we do not find clearly erroneous its determination that no federal arrest that would trigger the time limit of section 3161(b) occurred on August 4 or 5. The district judge instead concluded that the arrest was by tribal authorities, and the evidence supports his

finding.[12] Even though federal F.B.I. agents were involved in the investigation, the statutory time limit was not triggered. Regardless of the degree of federal involvement in a state or tribal investigation and arrest, only a *federal* arrest will trigger the running of the time period set forth in 18 U.S.C. § 3161(b). *See United States v. Adams,* 694 F.2d 200, 202 (9th Cir.1982); *accord, United States v. Iaquinta,* 674 F.2d 260, 264 (4th Cir.1982); *United States v. Wilson,* 657 F.2d 755, 767 (5th Cir.1981) (time limit under Northern District of Texas plan not triggered), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982); *United States v. Leonard,* 639 F.2d 101, 104–05 (2d Cir.1981) (time limit under Southern District of New York plan not triggered). The same rule applies even though federal agents questioned the defendant after his tribal arrest. *See, e.g., United States v. Iaquinta,* 674 F.2d at 268. We agree that the Speedy Trial Act was not violated by the delay between August 5 and the November 20 indictment.

C. *Refusal to Give Involuntary Manslaughter Instruction.*

■ At the conclusion of the trial, the defense requested jury instructions covering both self-defense as a defense to the murder charge and involuntary manslaughter as a lesser included offense for which the jury might instead convict the defendant. The district court refused to give both instructions, and compelled the defense to make a choice, whereupon the defense elected to proceed on the self-defense theory. The court relied upon *United States v. Skinner,* 667 F.2d 1306, 1309–10 (9th Cir. 1982), to conclude that an involuntary manslaughter instruction need not be given when the defense also requests a self-defense instruction. We cannot agree that *Skinner* should be read so broadly. A self-defense theory advanced by the defense can be consistent with a conviction for involuntary manslaughter under some circumstances.

Under the federal criminal code, involuntary manslaughter is

> the unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

18 U.S.C. § 1112(a) (1976). The offense thus defined can occur in circumstances that would support a defense of self-defense. The example most easily conceived is where the defendant is assaulted but does not have a reasonable apprehension of suffering great bodily harm or death, and is therefore privileged to use force, but only non-deadly force, in self-defense. *See* 2 C. Torcia, *Wharton's Criminal Law* § 192, at 316–17 (14th ed. 1979). If the defendant attempts to use non-deadly force, but does so in a criminally negligent manner and death results, then both involuntary manslaughter and self-defense instructions would be warranted, particularly if there is any disputed fact issue concerning the quantum of danger reasonably perceived by the defendant. This situation must be distinguished from the typical case of "imperfect self-defense," in which the defendant *intends* to use deadly force in the unreasonable belief that he is in danger of death or great bodily harm. In this circumstance, the offense is classed as voluntary manslaughter. *See Skinner,* 667 F.2d at 1310; 2 C. Torcia, *Wharton's Criminal Law* § 165, at 262–63 (14th ed. 1979).

■ The case of *United States v. Skinner* does not contradict this analysis. In *Skinner,* the defendant admitted that he had *intentionally* shot and killed the victim, but argued that he had shot him in self-defense. 667 F.2d at 1309. On these facts, the court quite properly held that no rational jury could have found the defendant guilty of involuntary manslaughter. *Id. See also Bishop v. Mazurkiewicz,* 634 F.2d 724, 726 (3d Cir.1980) (killing claimed to be in self-defense was accomplished with a gun, an

---

**12.** Not until December 1, 1981, was the appellant served with a summons. He was arraigned the following day, and released on his own recognizance.

instrument of deadly force, thus precluding any rational trier of fact from reaching involuntary manslaughter verdict), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981). Consequently, we must conclude that the district court erred in rejecting the defendant's requested involuntary manslaughter instruction on the ground that the defendant had also requested a self-defense instruction.

■ However, we conclude that the district court's error was harmless because the defendant was not entitled to an involuntary manslaughter instruction in any event. For a defendant to be entitled to an instruction regarding a lesser included offense, there must be evidence in the record that would enable a jury rationally to find all of the elements of the lesser included offense but not of the greater offense. *Skinner,* 667 F.2d at 1309; *United States v. Johnson,* 637 F.2d 1224, 1233–34 (9th Cir. 1980). One of the requisite conditions for an involuntary manslaughter conviction is that the defendant acted without malice. *See United States v. Celestine,* 510 F.2d 457, 460 (9th Cir.1975). Even accepting the defense's version of the facts,[13] the defendant stood by while his friends severely battered Terrell Howard with a board, then helped drag Howard's body to another location where he dropped a heavy tree stump on him, without making any effort at any time to stop the violence or to aid the victim. Such uncontradicted evidence would not have permitted a rational jury to conclude that Manuel caused Terrell Howard's death without at the same time concluding that Manuel acted with wanton and callous disregard of human life amounting to malice. *See United States v. Celestine,* 510 F.2d at 460. The defendant was not, therefore, entitled to an involuntary manslaughter instruction. *See id.; see also United States v. Lincoln,* 630 F.2d 1313, 1320 (8th Cir.1980); *United States v. Hendrix,* 542 F.2d 879, 883 (2d Cir.1976), *cert. denied,* 430 U.S. 959, 97 S.Ct. 1609, 51 L.Ed.2d 810 (1977).

13. Manuel's confession stated that he himself had hit Howard over the head with the board, in addition to helping to drag him away and dropping a stump on him. But the eyewitness-

The judgment of conviction is AFFIRMED.

es told investigating officers that Nelson was the person who had struck Howard over the head.