**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

STANETTE PATRICIA CROWE,
        *Defendant-Appellant.*

No. 08-30173

D.C. No.
CR 07-123-GF-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
February 3, 2009—Portland, Oregon

Filed April 24, 2009

Before: Richard A. Paez and Johnnie B. Rawlinson,
Circuit Judges, and Bruce S. Jenkins,* District Judge.

Opinion by Judge Jenkins

---

*The Honorable Bruce S. Jenkins, United States Senior District Judge
for the District of Utah, sitting by designation.

4845

**COUNSEL**

Anthony R. Gallagher, Federal Defender, Great Falls, Montana, for the defendant-appellant.

William W. Mercer, United States Attorney, and Eric B. Wolff, Assistant United States Attorney, Billings, Montana, for the plaintiff-appellee.

**OPINION**

JENKINS, Senior District Judge:

Appellant Stanette Patricia Crowe challenges her conviction and sentence for involuntary manslaughter under 18 U.S.C. §§ 1112(a) and 1153, arguing that the district court erred in admitting "other acts" evidence under Fed. R. Evid.

404(b); that it improperly instructed the jury on involuntary manslaughter as a lesser included offense; that the evidence adduced at trial was legally insufficient to establish her guilt of involuntary manslaughter beyond a reasonable doubt; and that her sentence of thirty-two months of imprisonment for that offense was unreasonable under the totality of the circumstances. We have jurisdiction of her appeal pursuant to 28 U.S.C. § 1291, and we affirm.

## I.  BACKGROUND

In December of 2006, Crowe was residing in Brockton, Montana[1] with Donald Eagleman, their eighteen-month-old son, and Crowe's father, Stanley. At that time, Crowe was nearly eight months pregnant. On December 31, 2006, Crowe and Eagleman went to a bar in Brockton to celebrate New Year's Eve, returning home shortly after midnight.

While at the bar, Eagleman became intoxicated, but did not want to leave the bar and was angry that they had returned home. Crowe asked Eagleman to stay home and tried to keep him from leaving, but Eagleman pushed her down and began hitting her.[2] The altercation between Crowe and Eagleman continued in the kitchen. Eagleman pushed Crowe against the kitchen counter, hitting her with his fist, grabbing her by the neck and repeatedly pulling her back and forth. Crowe then reached behind her back, grabbed a knife, and swung it at Eagleman, striking him once.[3] Eagleman then backed away

---

[1]Brockton is located within the exterior boundaries of the Fort Peck Indian Reservation and thus is "Indian country" within the meaning of 18 U.S.C. § 1151(a).

[2]Eagleman also demanded ten dollars from Crowe's father, who had been babysitting the couple's child that evening. After Crowe and Eagleman began arguing, Stanley Crowe retreated to his bedroom with the child and closed the door.

[3]The deputy state medical examiner testified that the knife penetrated Eagleman's chest between his ribs near his sternum, puncturing his right mammary artery, which bled nearly three liters into his pleural cavity, resulting in a right hemothorax that caused Eagleman's death.

from Crowe, said "I'm out of here," picked up his coat, and left the residence. Crowe then went to the bedroom and told her father, "I think I stabbed Donald."

A few minutes later, Eagleman returned to the residence and knocked on the front door. Crowe opened the door and Eagleman collapsed onto the floor. Having no telephone, Crowe then left her residence to get help. She located her uncle at her grandmother's house and then returned to her residence, where she found Eagleman still lying on the floor, complaining that it was hard for him to breathe. Eagleman asked Crowe to put pressure on his chest, which she did. Her uncle arrived, observed Eagleman lying on the floor, and then left to find the local police, who arrived at the residence a few minutes later. Eagleman was then transported by ambulance to the hospital, where he was later pronounced dead.

Following an investigation, Crowe was indicted by the grand jury on one count of voluntary manslaughter under 18 U.S.C. §§ 1112(a) and 1153. Crowe entered a "not guilty" plea and the matter proceeded to a jury trial on January 29, 2008.[4]

The jury heard testimony from the Government's witnesses concerning the events of New Year's Eve, as well as a prior incident in February of 2006 in which Crowe struck Eagleman in the head with a liquor bottle, cutting his ear. At the close of the Government's evidence, Crowe's counsel moved for a judgment of acquittal, which was denied. The jury then heard testimony from the defense witnesses, including Crowe herself, and from two rebuttal witnesses. The witnesses recounted the events of New Year's Eve, as well as prior inci-

---

[4]Crowe filed pretrial motions *in limine* to exclude "other acts" evidence relating to a prior altercation between Crowe and Eagleman in February 2006, and seeking to admit evidence of Eagleman's prior violent conduct towards Crowe. The district court ultimately ruled that both sides' "other acts" evidence would be received.

dents in which Eagleman had acted violently toward Crowe. Crowe's counsel renewed the motion for judgment of acquittal, which was denied. After closing arguments and jury instructions, the matter was submitted to the jury. On the evening of January 30, the jury returned a verdict acquitting Crowe on the charge of voluntary manslaughter, but finding her guilty of the lesser included offense of involuntary manslaughter.

Crowe's counsel filed a written motion for judgment of acquittal, which was heard and denied. The presentence investigation report computed an advisory Guidelines sentencing range of 27-33 months, based upon an adjusted offense level of 18 and a criminal history category of I. At her May 12, 2008 sentencing hearing, Crowe did not dispute those calculations, but requested a downward departure pursuant to U.S.S.G. § 5K2.10. The district court denied that request and imposed a sentence of thirty-two months' imprisonment, to be followed by a term of three years' supervised release.

## II.   DISCUSSION

### A.   Lesser Included Offense Instruction

In this appeal, we first consider whether in a prosecution for voluntary manslaughter, the district court correctly instructed the jury *sua sponte* concerning involuntary manslaughter as a lesser included offense after the defendant had asserted a claim of self-defense to the voluntary manslaughter charge.

[1] A trial court may instruct the jury as to a lesser included offense if (1) "the offense on which instruction is sought is a lesser-included offense of that charged" and (2) the "jury rationally could conclude that the defendant was guilty of the lesser-included offense but not of the greater." *United States v. Torres-Flores*, 502 F.3d 885, 887 (9th Cir. 2007) (quoting *United States v. Pedroni*, 958 F.2d 262, 267-68 (9th Cir.

1992)); *see* Fed. R. Crim. P. 31(c)(1). Generally, "[w]e review the first step de novo and the second step for abuse of discretion." *United States v. Arnt*, 474 F.3d 1159, 1163 (9th Cir. 2007) (citing *United States v. Naghani*, 361 F.3d 1255, 1262 (9th Cir. 2004)); *see also United States v. Anderson*, 201 F.3d 1145, 1148 (9th Cir. 2000) (determination "whether a jury could have found that the defendant was guilty of the lesser included offense but not of the greater" is reviewed for abuse of discretion). Where, as here, the defendant failed to timely object to jury instructions,[5] "we review under our familiar plain error standard."[6] *United States v. Santiago*, 466 F.3d 801, 803 (9th Cir. 2006); *see also Herzog v. United States*, 235 F.2d 664, 666-67 (9th Cir. 1956) (en banc) (in the absence of timely objection under Fed. R. Crim. P. 30, jury

---

[5]Crowe's counsel did not formally object to the court's proposed lesser included offense instruction at the jury instruction conference; nor did he inform the court of any objection to the lesser included offense instruction before the jury retired to deliberate, as required by Fed. R. Crim. P. 30(d). Counsel first asserted that the instruction was improper in Crowe's post-trial Rule 29 motion for judgment of acquittal. A Rule 29 motion for judgment of acquittal, however, is not the proper vehicle for raising an objection to jury instructions. Indeed, as this court recently noted, "the very nature of" a Rule 29 motion for judgment of acquittal "is to question the sufficiency of the evidence to support a conviction." *United States v. Cruz*, 554 F.3d 840, 844 n.4 (9th Cir. 2009) (internal quotations omitted); *see* 2A Charles A. Wright, *Federal Practice and Procedure: Criminal* § 466, at 299 (3d ed. 2000) ("There is only one ground for a motion for judgment of acquittal. This is that 'the evidence is insufficient to sustain a conviction' of one or more of the offenses charged in the indictment or information." (footnote omitted)); *see also United States v. Ellis*, 493 F. Supp. 1092, 1098 (M.D. Tenn. 1979) (errata in court's instructions to the jury not a cognizable ground for a post-trial motion for a judgment of acquittal), *aff'd*, 617 F.2d 604 (6th Cir. 1980).

[6]On plain error review, before we "can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Maciel-Vasquez*, 458 F.3d 994, 996 n. 3 (9th Cir. 2006) (internal quotation omitted).

instructions are reviewed for plain error under Fed. R. Crim. P. 52).

**[2]** Manslaughter is "the unlawful killing of a human being without malice." 18 U.S.C. § 1112(a). Voluntary manslaughter occurs upon "a sudden quarrel or heat of passion"; involuntary manslaughter, on the other hand, involves "the commission of an unlawful act not amounting to a felony, or . . . the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." *Id.* Involuntary manslaughter requires proof:

> (1) that the defendant acted with "gross negligence," defined as "wanton or reckless disregard for human life;" and (2) that the defendant had actual knowledge that his conduct was a threat to the lives of others, . . . or had knowledge of such circumstances as could reasonably be said to have made foreseeable to him the peril to which his acts might subject others.

*United States v. Keith*, 605 F.2d 462, 463 (9th Cir. 1979) (quoting *United States v. Escamilla*, 467 F.2d 341, 347 (4th Cir. 1972)); *see also United States v. Main*, 113 F.3d 1046, 1050 (9th Cir. 1997) (explaining that "the essential elements of a crime covered by § 1112 are not all expressed in the statute but are, instead, implicit in the common understanding of the crime."); *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* § 8.92 (2003). "Thus, involuntary manslaughter is an unintentional killing that 'evinces a wanton or reckless disregard for human life but not of the extreme nature that will support a finding of malice.' " *United States v. Paul*, 37 F.3d 496, 499 (9th Cir. 1994) (quoting *United States v. Lesina*, 833 F.2d 156, 159 (9th Cir. 1987)).

**[3]** Involuntary manslaughter is a lesser included offense of murder and voluntary manslaughter. *See Arnt*, 474 F.3d at

1163; *United States v. Skinner*, 667 F.2d 1306, 1309 n. 1 (9th Cir. 1982) (per curiam). Indeed, we have observed that in a homicide case, "if any construction of the evidence and testimony would rationally support a jury's conclusion that the killing was unintentional or accidental, an involuntary manslaughter instruction must be given." *Anderson*, 201 F.3d at 1150.

Crowe nonetheless insists that her claim of self-defense negated any theory that Eagleman's death was accidental or that his stabbing was an unintentional act because she intentionally delivered the stab wound that ultimately caused his death. She asserts that she was legally entitled to do so as a means of self-defense, and argues that in her case, involuntary manslaughter and self-defense are mutually exclusive. But Crowe's argument falls short of asserting that she intended to use *deadly force* in striking Eagleman with the knife, *i.e.*, that she *intended to kill him*, and the district court concluded from the evidence presented at trial that a rational jury could find that Crowe intentionally struck Eagleman with the knife, acting in self-defense, but without intending to kill him.[7]

**[4]** Crowe acknowledges that "[a] self-defense theory advanced by the defense can be consistent with a conviction for involuntary manslaughter under some circumstances." *United States v. Manuel*, 706 F.2d 908, 915 (9th Cir. 1983).

> The example most easily conceived is where the defendant is assaulted but does not have a reasonable apprehension of suffering great bodily harm or death, and is therefore privileged to use force, but only non-deadly force, in self-defense. *See* 2 C. Torcia, *Wharton's Criminal Law* § 192, at 316-17 (14th ed. 1979). If the defendant attempts to use non-

---

[7]As the district court explained in denying Crowe's Rule 29 motion, "We have a killing that was, by this record, apparently, accidental. That is, she didn't intend to kill the man. But she did stab him, and he died."

deadly force, but does so in a criminally negligent manner and death results, then both involuntary manslaughter and self-defense instructions would be warranted, particularly if there is any disputed fact issue concerning the quantum of danger reasonably perceived by the defendant. This situation must be distinguished from the typical case of 'imperfect self-defense,' in which the defendant intends to use deadly force in the unreasonable belief that he is in danger of death or great bodily harm. In this circumstance, the offense is classed as voluntary manslaughter. *See Skinner*, 667 F.2d at 1310; 2 C. Torcia, *Wharton's Criminal Law* § 165, at 262-63 (14th ed. 1979).

*Id.*[8]

   *United States v. Quintero*, 21 F.3d 885, 890 (9th Cir. 1994), described "intent without malice" as "the defining characteristic of voluntary manslaughter." As this court has explained:

While most voluntary manslaughter cases involve intent to kill, it is possible that a defendant who killed unintentionally but recklessly with extreme disregard for human life may have acted in the heat of passion with adequate provocation . . . . In such a case, the defendant would be guilty of voluntary manslaughter, not murder.

*United States v. Paul*, 37 F.3d 496, 499 n.1 (9th Cir. 1994) (citations omitted). Consistent with this standard, the district court instructed Crowe's jury that voluntary manslaughter

---

[8]In *Skinner*, the defendant admitted that he had intentionally shot and killed the victim, but argued that he had shot him in self-defense. *Id.* 667 F.2d at 1309. "On these facts, the court quite properly held that no rational jury could have found the defendant guilty of involuntary manslaughter." *Manuel*, 706 F.2d at 915 (citations omitted).

required proof of an intent to kill or use deadly force, or proof that the defendant acted "recklessly with extreme disregard for human life"; in contrast, the jury was instructed that involuntary manslaughter required proof that Crowe "committed an unlawful act not amounting to a felony," or "commited a lawful act done in either an unlawful manner or with wanton or reckless disregard for human life which might produce death."

The distinction between voluntary and involuntary manslaughter thus turned on the degree of intent, and if the Government failed to convince the jury that Crowe acted with the intent to kill or that she acted recklessly with extreme disregard for human life, the jury nonetheless could find that Crowe attempted to use non-deadly force in self-defense, but did so with wanton and reckless disregard for human life, causing Eagleman's death.[9] The jury's verdict—acquitting Crowe on voluntary manslaughter but convicting her of involuntary manslaughter—comports with the latter conclusion.

[5] That Eagleman's stabbing was intentional, and not the result of inadvertence or happenstance (*e.g.*, the decedent "falling on the knife" during an altercation, as in *Arnt* and *Anderson*), does not mean that Crowe intended to cause Eagleman's death or that she acted with extreme disregard, warranting a voluntary manslaughter conviction.[10] Ample evidence in the trial record, including Crowe's own testimony, supports the conclusion that Crowe intentionally struck Eagleman with the knife, attempting to fend off his attack, but that

---

[9]At trial, there was also a "disputed fact issue concerning the quantum of danger reasonably perceived by the defendant," *Manuel*, 706 F.2d at 915, lending further support to the lesser included offense instruction.

[10]Crowe did not testify that she intended to kill Eagleman when she struck him with the knife. Nonetheless, Crowe's counsel appears to equate her intent in striking at Eagleman with the knife with an intent to use deadly force, seemingly suggesting that Crowe should have been found guilty of *voluntary* manslaughter as another "typical case of 'imperfect self defense.'" *Manuel*, 706 F.2d at 915.

she did not intend to kill him. The district court thus did not commit plain error in concluding that a rational jury could so find, and in instructing the jury as to involuntary manslaughter as a lesser included offense.

## B.    Sufficiency of the Evidence

[6] That same evidence as to Crowe's mental state refutes her assertion that the evidentiary record at trial was legally insufficient to establish her guilt of involuntary manslaughter beyond a reasonable doubt. Viewing the evidence "in the light most favorable to the prosecution," we conclude that " 'any rational trier of fact could have found the essential elements of the offense[ ] charged beyond a reasonable doubt,' " *United States v. Rosales*, 516 F.3d 749, 751-52 (9th Cir. 2008) (quoting *United States v. Hinton*, 222 F.3d 664, 669 (9th Cir. 2000)), as Crowe's jury did.

## C.    The Government's "Prior Acts" Evidence

[7] Crowe also argues that the district court erred in admitting testimony concerning a prior incident in February of 2006 in which Crowe struck Eagleman on the head with a bottle, injuring him, as "prior acts" evidence under Fed. R. Evid. 404(b) relevant to the issue of Crowe's intent. Yet even if this court were to conclude that the district court erred in ruling that evidence admissible, any such error proved to be harmless. In acquitting Crowe on the voluntary manslaughter charge set forth in the indictment, the jury rejected the Government's theory concerning Crowe's intent or state of mind.[11] Instead, the jury found Crowe guilty of the lesser included offense of involuntary manslaughter, which they were instructed was "the unlawful killing of a human being without

---

[11]The Government argued that on New Year's Eve in 2006, Crowe had experienced "a flash of anger" that resulted in the stabbing death of Eagleman, and that, like the February 2006 incident, Crowe had struck at Eagleman because she was angry at him, not because she feared for her life.

malice aforethought and without an intent to kill." It thus proves unlikely that the admission of Rule 404(b) evidence concerning the February 2006 incident affected the jury's verdict. *See United States v. Chu Kong Yin*, 935 F.2d 990, 994 (9th Cir. 1991) ("A nonconstitutional evidentiary error will be reversed for an abuse of discretion only if the court's ruling more likely than not affected the verdict."). Crowe has failed to demonstrate a reasonable probability that a different result would have obtained absent the Rule 404(b) testimony and, thus, has failed to demonstrate that the alleged error affected her substantial rights. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).[12]

## D.   Crowe's Sentence

Finally, Crowe argues that her sentence of thirty-two months of imprisonment is unreasonable under *Booker*[13] and *Kimbrough*[14] because (1) the district court misinterpreted the

---

[12]Crowe also argues the admission of testimony by an investigating officer concerning the February 2006 incident violated her rights under the Due Process and Confrontation Clauses, citing *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis v. Washington*, 547 U.S. 813 (2006). But the trial testimony of Officer Timothy Lingle concerning his investigation of the February 2006 incident was footed almost entirely upon his own observations and statements made to him at that time by Ms. Crowe herself. Crowe does not explain how her own out-of-court statements raise hearsay or Confrontation Clause concerns, *cf.* Fed. R. Evid. 801(d)(2) (admissions by party-opponent), and at trial, her counsel could—and did—cross-examine the officer about what he had observed and what Crowe had told him about the February 2006 incident.

[13]*United States v. Booker*, 543 U.S. 220, 260-65 (2005); *see United States v. Dallman*, 533 F.3d 755, 760-761 (9th Cir. 2008) ("*Booker* directs that we review the overall reasonableness of [the defendant's] sentence and that our review be guided by the sentencing factors set forth in 18 U.S.C. § 3553(a)." (footnote omitted)).

[14]*Kimbrough v. United States*, 128 S. Ct. 558 (2007), concluded that a sentence outside the guidelines range is not *per se* unreasonable when it is based on a disagreement with the sentencing policy reflected in particular guidelines provisions. *Id.* at 564.

facts surrounding the death of Donald Eagleman, ignoring Crowe's evidence concerning her claim of self-defense and the victim's behavior that night, as well as his prior violent conduct toward her; (2) the term imposed is greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553; (3) the federal sentencing guidelines routinely "produce a range of sentences that are unconscionably too long"; and (4) the victim's wrongful conduct contributed significantly to provoking the offense conduct, warranting a downward departure under U.S.S.G. § 5K2.10. Although Crowe concedes that the district court's calculation of the applicable advisory Sentencing Guidelines range (27-33 months) was correct, taking into account her criminal history reflecting no prior criminal convictions, and that her thirty-two-month sentence falls within that range, she argues that "apart from the rote recitation of § 3553(a) factors and applicable Supreme Court and Ninth Circuit cases," the district court's sentencing analysis "was not 'reasoned' " as the law requires, citing *United States v. Rita*, 551 U.S. 338, 127 S. Ct. 2456, 2468-69 (2007).

When reviewing a sentence, we first consider "whether the district court committed significant procedural error," including an incorrect Sentencing Guidelines determination. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc) (citing *Gall v. United States*, 128 S. Ct. 586, 597 (2007)), *cert. denied*, 128 S. Ct. 2491 (2008). We next consider whether, in light of the factors set forth in 18 U.S.C. § 3553(a),[15] the dis-

---

[15]These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants who have similar criminal records and have been found guilty of similar conduct; and (7) the need to provide restitution to victims. 18 U.S.C. § 3553(a). "These factors are to be applied parsimoniously—the sentence must be 'sufficient, but not greater than necessary, to comply with the purposes' of punishment." *United States v. Barsumyan*, 517 F.3d 1154, 1157-58 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)).

trict court abused its discretion by imposing a substantively unreasonable sentence. *Id.* We review the district court's interpretation of the Guidelines *de novo*, its application of the Guidelines to the facts for an abuse of discretion, and its factual findings for clear error. *United States v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008). Appellate review of the severity of Crowe's sentence is limited "to determin[ing] whether the sentence is reasonable; only a procedurally erroneous or substantively unreasonable sentence will be set aside," and the abuse of discretion standard applies. *Carty*, 520 F.3d at 993.[16]

At Crowe's sentencing, the district court explained that it had considered all of the statutory factors under § 3553(a), and detailed its evaluation of Crowe's personal culpability and her claim of self-defense, explaining Crowe's sentence primarily in terms of the nature and seriousness of the offense and the need for just punishment—both of which are statutory sentencing factors under § 3553(a)(1) and (2)(A).[17] The district court rejected Crowe's argument as to her diminished culpability, explaining that "the conduct of the decedent did not warrant the level of attack that you inflicted upon him with a knife, and the infliction in that process of fatal wounds," that "such unexcused acts of violence have consequences under the law," and that the facts did not warrant a downward departure from the applicable Sentencing Guide-

---

[16]A substantively reasonable sentence is one that is "sufficient, but not greater than necessary" to accomplish § 3553(a)(2)'s sentencing goals. 18 U.S.C. § 3553(a); *see, e.g., United States v. Vasquez-Landaver*, 527 F.3d 798, 804-05 (9th Cir. 2008) (affirming sentence as reasonable where the record shows the district court considered the § 3553(a) factors and imposed a sentence that was sufficient but no greater than necessary to comply with § 3553(a)); *United States v. Rodriguez-Rodriguez*, 441 F.3d 767, 771 (9th Cir. 2006) (same).

[17]As to these factors, Crowe's Sentencing Memorandum conceded that "the seriousness of the offense cannot be challenged," and asserted that "[i]n light of all pertinent sentencing factors, a sentence at or below the low end of the advisory guideline range promotes respect for the law and provides just punishment."

line range in this case.[18] Crowe disputes the district court's characterization of Eagleman's stabbing as an "unexcused" act of violence, but by finding her guilty of involuntary manslaughter, the jury had already determined Crowe's act to be unexcused, at least to that extent.[19]

**[8]** In arguing more broadly that the federal Sentencing Guidelines routinely recommend sentences that are "unconscionably too long," Crowe assails them with little more than anecdotes,[20] which by themselves cannot justify excluding the Guidelines *per se* from consideration as one statutory factor under § 3553(a)(4)— just as they were treated in the context of this case. *See Carty*, 520 F.3d at 991 (the sentencing guidelines "are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence" (citations omitted)).

The district court properly treated the Guidelines range as a baseline, considered the factors enumerated in § 3553(a) in

---

[18]In denying a downward departure, the district court also discussed the relative leniency of the applicable guidelines sentencing range in dealing with the killing of an unarmed man using a deadly weapon.

Of course, after *Booker* "the scheme of downward and upward 'departures' [is] essentially replaced by the requirement that judges impose a 'reasonable' sentence." *United States v. Mohamed*, 459 F.3d 979, 986 (9th Cir. 2006). "*Booker*'s mandate that we review a sentence for reasonableness now permits us to consider what we previously could not—the district court's decision not to impose a lesser sentence" on grounds justifying a downward departure under the guidelines, at least to the extent that the decision implicates the overall reasonableness of the sentence. *Dallman*, 533 F.3d at 761.

[19]Crowe acknowledged as much in her Sentencing Memorandum: "As the salient facts surrounding the incident unquestionably show, Ms. Crowe's actions were understandable, *if not completely excusable* in the jury's eyes." (Emphasis added.)

[20]Crowe points to the Presidential commutation of Lewis "Scooter" Libby's thirty-month sentence for perjury and obstruction of justice as an example.

tailoring Crowe's sentence to suit her offense of conviction,[21] and arrived at a sentence it determined is sufficient, but not greater than necessary, to accomplish § 3553's sentencing goals—a sentence not more than five months longer than the low end of the applicable Guidelines range, which Crowe had asserted would be an appropriate sentence. As in *Rita*, 127 S. Ct. AT 2469,[22] the district court sufficiently "listened to each argument," "considered the supporting evidence" as well as Crowe's personal circumstances and "imposed a sentence that takes them into account." Crowe has not demonstrated how, in light of the totality of the circumstances, the district court abused its discretion in imposing her sentence. *See Carty*, 520 F.3d at 988.

[9] We thus conclude that the sentence imposed by the district court was given sufficient explanation by the district court to permit effective appellate review, and is substantively reasonable in light of the totality of the circumstances. *See Gall*, 128 S. Ct. at 596-97, 600-02; *Carty*, 520 F.3d at 993; *Dallman*, 533 F.3d at 760-761. We affirm it in all respects.

**AFFIRMED.**

---

[21]We give deference to the district court's weighing of those factors. *See United States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008) ("[W]e must defer to the [d]istrict [c]ourt's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." (internal quotation marks omitted)); *United States v. Carter*, Nos. 05-50303, 05-50321, ___ F.3d ___, 2009 WL 805801, at *10 (9th Cir., March 30, 2009) ("The Supreme Court has directed us to give substantial deference to the district court's determination because it is better situated than we are to determine an appropriate sentence." (citing *Gall*, 128 S. Ct. at 597-98)).

[22]In *Rita*, the Court affirmed as reasonable a sentence of thirty-three months' imprisonment for perjury and obstruction of justice. 127 S. Ct. at 2470.