**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10326 |
| Plaintiff - Appellee, | D.C. No. 5:09-cr-00313 RMW |
| v. | MEMORANDUM[*] |
| KURTIS THORSTED, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted May 13, 2011
San Francisco, California

Before: B. FLETCHER and THOMAS, Circuit Judges, and ROSENTHAL, District Judge.[**]

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Lee H. Rosenthal, District Judge for the U.S. District Court for Southern Texas, Houston, sitting by designation.

Kurtis Thorsted made fifty-one false distress calls over a five-month period to the United States Coast Guard. He pleaded guilty to three counts of knowingly and willfully communicating false distress messages to the Coast Guard, in violation of 14 U.S.C. § 88(c), and to three counts of making unlicensed radio transmissions, in violation of 47 U.S.C. §§ 301 and 501. Thorsted was sentenced to concurrent terms of thirty months for each false distress message count and twenty-four months for each unlicensed transmission count. In calculating the guideline range, the district judge applied the two-level enhancement under U.S.S.G. § 2B1.1(b)(13)(A) for conduct that "involved the conscious or reckless risk of death or serious bodily injury."

Thorsted appeals from his sentence on two grounds. He challenges the application of the enhancement, contending that the record does not support the finding that he acted with conscious or reckless risk of death or serious bodily injury. He also contends that the sentence was unreasonable under 18 U.S.C. § 3553(a). Because the parties are familiar with the factual and procedural history, it is not repeated here. Finding no error in either the guideline calculation or the application of the § 3553(a) factors, we affirm.

## I.    The Sentence Enhancement

"We review the district court's interpretation of the Guidelines *de novo*, its application of the Guidelines to the facts for an abuse of discretion, and its factual findings for clear error." *United States v. Crowe*, 563 F.3d 969, 977 (9th Cir. 2009).

Under U.S.S.G. § 2B1.1(b)(13)(A), a conscious risk of death or serious bodily injury is distinct from a reckless risk of death or serious bodily injury. *United States v. Johansson*, 249 F.3d 848, 858–59 (9th Cir. 2001). We address only the conscious-risk prong here.

"A district court does not abuse its discretion in applying [U.S.S.G. § 2B1.1(b)(13)(A)] when the defendant has acted in conscious . . . disregard of a known risk of serious bodily injury even if the ultimate probability of occurrence is found to be relatively low." *United States v. W. Coast Aluminum Heat Treating Co.*, 265 F.3d 986, 993 (9th Cir. 2001). Only "some" evidence that the conduct created a risk of serious bodily injury is required. *See, e.g.*, *United States v. Awad*, 551 F.3d 930, 941 (9th Cir. 2009) (upholding the application of § 2B1.1(b)(13)(A) based on the district court's finding that a requirement that a physician be present during the administration of a respiratory therapy showed that the treatment "carried some risk" when administered without a physician present). The nature of the offense can support a finding that the defendant was subjectively aware of the

risk his conduct created. *See Johansson*, 249 F.3d at 859 (finding that it was "apparent from the nature of [the defendant's] offense itself — creating false logbooks to conceal hours-of-driving violations — that the offense involved the risk of serious bodily injury").

The record clearly satisfies these requirements. Coast Guard personnel testified that the risk of serious bodily injury or death is inherent in air or sea rescue missions in the foggy and mountainous San Francisco area, even in fair weather. The Coast Guard deployed rescue craft and personnel in response to five of Thorsted's calls. One response was by airplane, flying at night; three responses involved helicopters flying below 1,000 feet. The testimony identified flying at night and at low altitudes as inherently dangerous. Coast Guard personnel also testified that false distress calls interfere with the Coast Guard's ability to respond to actual distress calls. The risk of serious bodily injuries from such interference is heightened by the fact that Thorsted made so many — fifty-one — false distress calls over five months. The record provides ample evidence that Thorsted's conduct created a risk of serious bodily injury or death, and the district court was within its discretion in making this finding.

Thorsted argues that his calls did not cause a sufficient risk of serious bodily injury to trigger the enhancement. Thorsted notes the evidence that there was good

weather on the five occasions when the Coast Guard deployed personnel in response to his calls. But the law is clear that no showing that injury did or was likely to occur is necessary. "It is the creation of risk, not the infliction of injury, that is required for application of this guideline provision." *W. Coast Aluminum*, 265 F.3d at 993. The enhancement is appropriate without evidence that Thorsted's conduct increased the usual risks associated with false distress calls or with air or sea rescue missions. *Id.*

Nor did the district court abuse its discretion in finding that Thorsted was consciously aware that his conduct involved a risk of serious bodily injury. When Thorsted was sentenced in 2001 for making false distress calls to the Coast Guard, the court admonished him that "[t]his is the kind of thing which is serious enough that we can't ignore . . . it could be far more serious the next time around." Thorsted emphasizes that the sentencing court did not explicitly admonish him that what he calls "simple Mayday" calls — as opposed to the series of calls that he knew interfered with rescuing a boat in actual distress — also entailed risks to the safety of others. But the length of Thorsted's prior sentence, the judge's admonishments that making a false distress call was "serious" despite the lack of actual harm to the other boat, and the warning to Thorsted that "it could be far more serious the next time," provided ample basis for the district court to conclude

5

in this case that Thorsted consciously understood the risks of false distress calls, even if limited to the word "Mayday."[1]

Thorsted's acts repeatedly violated laws designed to promote safety and reduce injury. In *Johansson*, the defendant's violation of regulations designed to promote safety and reduce injury risks supported the finding that the conduct involved the conscious risk of serious bodily injury. *Johansson*, 249 F.3d at 859–60.[2]

---

[1]During oral argument, Thorsted stated that he was "not relying on" his mental limitations to challenge the district court's finding that he was conscious that his conduct risked death or seriously bodily injury. To the extent Thorsted intended in his brief to argue that the effects of his 1999 head injury prevented him from understanding his conduct's risk, the district court was within its discretion to find otherwise. As the judge who previously sentenced Thorsted noted, his conduct showed "a level of thinking and planning and sophistication" that showed he was "sufficiently capable to understand the nature and quality of the offense." This, in addition to the evidence discussed above, undercuts the argument that more explicit warnings were required to make him consciously aware of the risks his conduct created.

[2]Thorsted also argues that the district court committed "procedural error" in applying § 2B1.1(b)(13)(A) to the sentence. Thorsted's argument is not that § 2B1.1(b)(13)(A) is *per se* improper to apply to his offense or that the district court made a mathematical error in calculating his sentence. Instead, Thorsted argues that because the evidence did not support the § 2B1.1(b)(13)(A) enhancement, the district miscalculated his sentence. This does not provide an independent basis for review or for relief.

The record does not disclose any basis to find that the district court erred in applying the enhancement for conduct that involved a conscious risk of serious bodily injury.

## II.    Reasonableness

We review a district court's sentencing decision for abuse of discretion. The issue is "whether, in light of the factors set forth in 18 U.S.C. § 3553(a), the district court abused its discretion by imposing a substantively unreasonable sentence." *Crowe*, 563 F.3d at 977.[3] "A substantively reasonable sentence is one that is 'sufficient but not greater than necessary' to accomplish § 3553(a)(2)'s sentencing goals." *Id.* at 977 n.16.

---

[3]These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants who have similar criminal records and have been found guilty of similar conduct; and (7) the need to provide restitution to victims.

*Crowe*, 563 F.3d at 977 n.15 (citing 18 U.S.C. § 3553(a)).

The record shows that the district court addressed several of the § 3553(a) factors. *See United States v. Mix*, 457 F.3d 906, 912–13 (9th Cir. 2006) ("A district court is not required to refer to each factor listed in § 3553(a) . . . . '[A] checklist recitation of the section 3553(a) factors is neither necessary nor sufficient for a sentence to be reasonable.'" (citations omitted) (quoting *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006)). The court considered both "the kinds of sentences available" and "the kinds of sentences and the sentencing range established by the Sentencing Guidelines," though the court ultimately concluded that the Guidelines were not "all that helpful" and rejected Thorsted's request for probation. The court also carefully considered "the nature and circumstances of the offense and the history and characteristics of the defendant," noting that this was "a repeat situation," that Thorsted had made fifty-one false distress calls, and that the Coast Guard had made "tremendous responses" to some of those calls. The court further considered Thorsted's mental condition and noted that the sentence would be higher without the evidence of his injury and mental health issues. The district court's consideration of the § 3553(a) factors weighs heavily in favor of upholding the substantive reasonableness of the sentence.

Thorsted argues that the sentence was greater than necessary to deter future misconduct because the evidence showed that he could comply with the law under

8

the supervision that probation could provide. Thorsted emphasizes that he had made no false distress calls during supervised release and that the one-word "Mayday" calls presented a lower risk than the calls that formed the basis of his prior conviction, when he persistently interfered with an actual distress call. The district court, however, was within its discretion in rejecting these arguments. The fact that Thorsted made fifty-one false distress calls after serving a twenty-four month sentence for a similar prior offense is strong evidence that he could not conform his behavior to the law. The district court specifically noted that Thorsted was a danger to public safety and emphasized the need for deterrence. There was no abuse of discretion.

Finally, Thorsted argues that the sentence was substantively unreasonable in light of his cancer diagnosis. The evidence shows that Thorsted's cancer has been in remission since February 2007. While, as Thorsted points out, his cancer is not "cured," the district court was within its discretion in discounting this factor in determining his sentence.

The district court carefully fashioned the sentence in a case involving highly unusual facts. That sentence is **AFFIRMED.**

9